# CHARLESTON.

## STATE *v.* JASON WINANS.

### (No. 5081)

Submitted November 10, 1925.    Decided November 17, 1925.

1. CRIMINAL LAW—*If New Trial Depends on Weight of Testimony or Inferences From it, Jury Are Exclusively and Almost Uncontrollably the Judges.*

    If a new trial depends upon the weight of testimony or inferences from it, the jury are exclusively and almost uncontrollably the judges.  (p. 420.)

    (Criminal Law, 16 C. J. § 2707 p. 1180 n. 74.)

2. LARCENY—*Evidence Held to Sustain Conviction for Larceny.*

    . A case where the appellate court is not warranted in disturbing the verdict.  (p. 420.)

    (Larceny, 36 C. J. § 483 p. 899 n. 34.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Barbour County.

Jason Winans was convicted of larceny, and he brings error.

*Affirmed.*

*Wm. T. George,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

WOODS, JUDGE:

Jason Winans, hereafter referred to as the defendant, was indicted jointly with his two brothers-in-law, Henry Shanabarger and Austin Shanabarger, for the theft of eight chickens—seven Rhode Island red hens and one Plymouth Rock hen—from the chicken house of one Milton Furr; said hens being of the value of $8.00. The indictment contained two counts, one for entering said chicken house without breaking with intent to commit larceny, and the other for entering the same with like intent by breaking. The defendant asked for a severance. He was tried, found guilty, and sentenced to

confinement in the penitentiary. From this judgment he prosecutes this writ of error.

Milton Furr, on the morning of February 14th, 1922, discovered that nine of his hens—eight Rhode Island reds and one Plymouth Rock—had been stolen from his chicken house. On the afternoon of the same day, the three aforementioned indictees visited the store of Jedge Jones, seven miles distant from the Furr home, and sold nine hens of like description, for the sum of $4.00, which amount was taken out in trade. The defendant bought to the amount of $1.35. Henry Shanabarger claimed that the chickens sold were his property, and that he permitted defendant to buy merchandise from the store to the amount of $1.35, explaining that, "It was boot money between a trade we had." Jedge Jones testified that Henry said something about "I have paid you up." These hens were sold to several persons; and two of them finally came into the hands of Furr, they being identified by him. George McMurdo testified that one evening while riding on the train with defendant, he (defendant) admitted to him that "he was with the bunch" when the chickens were stolen. Defendant admitted that he had had a conversation with McMurdo at the time mentioned but said that he was referring to another night that "he was out with the bunch".

In order to prove an alibi, the three indictees all testified to the effect that the defendant was not in the neighborhood of Furr's the night of the theft. They state that defendant came to the home of Henry Shanabarger about noon, February 13th, 1922; that about five o'clock defendant, together with the other two indictees and their brother Lafe Shanabarger, went to Carleton, one and one-half miles away (in the direction of Furr's), for some carbide in preparation for a hunting trip that night; that Austin Shanabarger, one of the indictees, went on over to stay with his sister (defendant's wife) that night; that defendant, Henry Shanabarger, and Lafe Shanabarger left the store, where the carbide was purchased, after dark and returned to the home of Henry Shanabarger—deciding not to go hunting; that the defendant staid there all night; and that on the following afternoon the three

indictees went to the store where Henry Shanabarger sold the chickens. The defendant admitted that he received $1.35 from the proceeds of the sale, but claimed it was for a debt that his brother-in-law owed him as "boot" money in a trade.

The errors relied upon are confined to the instructions given to the jury by the court at the instance of the state, and to the refusal of the court to set aside the verdict of the jury because the same was contrary to the law and the evidence.

The instructions given on behalf of the state told the jury: (1) That they must believe the defendant guilty beyond all reasonable doubt before they could convict him; (2) what constituted reasonable doubt; (3) where conviction may be had on circumstantial evidence; (4) that possession by defendant of property recently stolen is a circumstance to be considered with all other facts and circumstances; and (5) that they were the sole judges of the weight of the testimony. Each of these instructions has been approved by this Court in numberless cases. The objection of the defendant went to the fact that the evidence would not warrant the giving of them. The instruction relating to the possession of stolen property is particularly complained of. This instruction is in the language of an instruction approved in the recent case of *State* v. *Powers,* 91 W. Va. 737, where the court told the jury that in a prosecution for larceny, where goods are found in the possession of another, it is a circumstance tending to show that the persons found in charge thereof are the thieves, and the jury may consider it in connection with all the other circumstances of the case. However, considered alone it would not be prima facie evidence of their guilt. *State* v. *Reece,* 27 W. Va. 375; *State* v. *Heaton,* 23 W. Va. 773.

This leaves but one question for determination: Does the evidence support the verdict? The facts put in evidence by the state made a case for the jury. While they are contravened by the denial of the defendant, and the alibi that he, in conjunction with his brothers-in-law, endeavored to set up —these are also matters for the consideration of the jury. The credibility of the testimony adduced in support of the alibi is a matter exclusively for them. *Cunningham* v. *Com-*

*monwealth,* 88 Va. 37; *Dean* v. *Commonwealth,* 32 Gratt. 912; *Jordan* v. *State,* 18 Ga. App. 44. Accordingly, when the evidence will sustain a verdict of guilty the jury may disregard, if they think fit, the alibi testimony although the latter is complete and covers the whole time during the time the offense was committed. *State* v. *Droak,* (Tex) 43 S. W. 988. In the instant case the court properly instructed the jury at the request of the defendant especially on the law respecting alibi. Under the instruction had the evidence offered by defendant raised a reasonable doubt as to his guilt, the jury would have acquitted him. *State* v. *Lowry,* 42 W. Va. 205. This court has time and again held that where there is evidence tending to incriminate, the jury is almost uncontrollably the judge of its force and weight, and of the proper inferences from the facts proven. *State* v. *Burner,* 94 W. Va. 634; *State* v. *Sullivan,* 55 W. Va. 598; *State* v. *Musgrave,* 43 W. Va. 672; *State* v. *Bowyer,* 43 W. Va. 180; *State* v. *Hurst,* 11 W. Va. 54. The defendant here was defended by able counsel, and as shown by the record his every interest was carefully safeguarded. This court can only consider the case in the light of the ordinary rules governing the admissibility and weight of the testimony, keeping in view the great underlying principle that the jury, and not the court must determine what is the truth in every case. The verdict of guilty comes here with the approval of the learned judge of the trial court and he must have been thoroughly satisfied of the defendant's guilt, or he would have set the verdict aside. He was in a much better position than we are to know the truth of the matter, and with due deference to his duty and judgment, we will not disturb this judgment. It is, accordingly, affirmed.

*Affirmed.*