STATE OF WEST VIRGINIA

*v.*

MORRIS WOODS

(No. 12957)

Submitted September 21, 1971. Decided November 2, 1971.

*Callaghan & Callaghan, Brooks B. Callaghan,* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *George E. Lantz,* Deputy Attorney General, *Willard A. Sullivan,* Assistant Attorney General, for defendant in error.

BERRY, JUDGE:

The defendant, Morris Woods, was indicted with William Feazell and Charles Flint as accessories before the fact to a felony by the grand jury of Nicholas County, West Virginia. Three principals, James Keener, James Petry and John Thomas, pleaded guilty to a charge of grand larceny of a walnut log valued at $600. The defendant, in a separate trial, was found guilty by a jury of being an accessory before the fact to petit larceny and was sentenced to one year in the county jail. A writ of error and supersedeas to the judgment of the Circuit Court of Nicholas County of October 2, 1969, was granted by this Court on April 20, 1970, and the case was submitted for decision on briefs of the parties without argument on September 21, 1971.

The three principals, Keener, Petry, and Thomas, discovered a number of valuable walnut logs which had been

recently cut and decided to steal them if they could find a buyer and obtain a bulldozer to remove the logs. The three principals approached the defendant at his home and asked him if he was interested in buying the logs, to which the defendant replied he was not. The defendant was then asked if he knew anyone who would buy the logs and also where the principals could obtain a bulldozer with which to move the logs out of the woods. The defendant told the principals that William Feazell was the timber buyer for the Fayette Lumber Company and that he had seen Feazell at a local tavern shortly before. The defendant also supplied the names of several people who owned bulldozers, one of whom was Charles Flint. The defendant, at the request of one of the principals, introduced Feazell to the principals and then accompanied Feazell and the three principals to the location of the logs in order that Feazell could inspect them. It was dark when the logs were inspected by Feazell, but he agreed to pay the going market price for the logs if they were delivered to the lumber yard. Two of the principals, John Thomas and James Petry, testified that Thomas told Feazell and the defendant, during the inspection, the logs were "hot". The defendant and Feazell denied they knew the logs were to be stolen. Thomas admitted that he had told the defendant and Feazell he was "worn-out" from cutting the logs.

The defendant also accompanied the three principals to talk with Flint about obtaining a bulldozer. Flint was not at home the first time they went to see him and on the second occasion when the defendant went with the principals he would not consent to the request of the principals. The defendant was not with the principals when Flint finally agreed to let them use the bulldozer. Flint testified that he was to receive $150 for the use of the bulldozer for 24 hours and a notarized contract to that effect was placed into evidence. The principals testified that Flint knew the log was to be stolen and was to receive 25 percent of the selling price of the log as his share, which would be about $150. The testimony of the three principals was to the effect that the defendant knew the log was to

be stolen but did not want to participate actively in the theft of the log.

During the trial William Ray testified on behalf of the defendant that John Thomas, one of the principals, had told him the defendant did not have anything to do with the stealing of the log and did not even know the principals were stealing it. Ray also testified that Thomas had told him that he, Thomas, refused to sign a statement absolving the defendant of any wrongdoing because it might jeopardize his chances for probation. On cross-examination the state asked Ray if he had entered a guilty plea in the trial court for assault on a certain Walter Christian, which was objected to by the defendant, but was allowed to be considered for the purpose of testing the credibility of the witness. The state then asked the witness Ray if there were warrants sworn out for him for assault on two of the principals, Petry and Thomas. The trial court allowed the witness to answer, stating that such testimony was proper to show bias or prejudice of the witness.

The defendant moved for a mistrial with regard to testimony relating to the warrants in connection with the assaults on the principals who testified for the state, which was overruled by the trial court. At the conclusion of all the evidence the defendant made a motion for a directed verdict, which was also overruled.

The defendant contends that inasmuch as the three principals were granted probation by the trial court after the conclusion of the defendant's trial this constituted newly discovered evidence and a new trial should be granted on that ground.

The defendant timely moved for a new trial but withdrew this motion and then made a motion that the defendant be granted probation. The trial court gave due consideration to the motion for probation and directed that an investigation be conducted in connection with the motion. The investigation which followed indicated the defendant was not a proper subject for probation,

consequently, probation was refused, after which the defendant filed a notice for appeal.

The assignments of error are as follows:

(1) The refusal of the trial court to direct a verdict at the conclusion of all the evidence; (2) refusal to declare a mistrial because of questions with regard to a conviction of a witness for a misdemeanor and questions relative to warrants sworn out for assaults by him on the state's witnesses; (3) the giving of Instruction No. 4 offered by the state defining an accessory but omitting that the act was "knowingly or wilfully" done; (4) the refusal to grant a new trial upon newly discovered evidence; and that the verdict was legally improper because the indictment was for an accessory before the fact to a felony and the verdict was for accessory before the fact to a misdemeanor.

The first assignment of error for the refusal of the trial court to direct a verdict for the defendant is not well taken. The evidence in this case is conflicting, and the weight of such evidence, as well as the credibility of the witnesses, is a matter for jury determination and not for the court. 23A C.J.S., *Criminal Law*, § 1145 (3) a & b, pps. 363, 364; *State* v. *Winans*, 100 W.Va. 418, 130 S.E. 607; *State* v. *Etchell*, 147 W.Va. 338, 127 S.E.2d 609; *State* v. *Bailey*, 151 W.Va. 796, 155 S.E.2d 850; *State* v. *West*, 153 W.Va. 325, 168 S.E.2d 716. The state's evidence was that the defendant knew the logs were stolen and that he helped to obtain a purchaser, a bulldozer and a truck to transport the logs. He not only assisted in obtaining a buyer of the logs before they were stolen but also took the principals to the proposed purchaser and introduced them to him. He also performed the same service with regard to obtaining a bulldozer and truck in order to haul the logs away.

It is true the evidence of the defendant was in conflict with the state's evidence in this respect, but this makes the case one for jury determination, and for the court to direct a verdict would be an invasion of the province of the jury. This principle is clearly stated in point 2 of the syllabus of the case of *State* v. *Bailey, supra,* in the following

language: "The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses."

Upon motion to direct a verdict for the defendant, the evidence is viewed in the light most favorable to the prosecution. It is not necessary that the courts be convinced beyond a reasonable doubt of the defendant's guilt. The only question to be considered by the court is whether there is substantial evidence upon which a jury could find the defendant guilty beyond a reasonable doubt. *White* v. *United States,* 279 F.2d 740, (*Cert. denied* 364 U.S. 850, 81 S. Ct. 96, 5 L. Ed. 2d 74); *State* v. *West, supra.* The same principle is involved with regard to a motion for a new trial and is appropriately stated in point 1 of the syllabus of the case of *State* v. *Winans, supra,* wherein it is stated: "If a new trial depends upon the weight of testimony or inferences from it, the jury are exclusively and almost uncontrollably the judges."

The second assignment of error with regard to asking the defendant's witness if he had been convicted of a misdemeanor, and whether or not warrants had been sworn out for him for assaults committed by him on the state's witnesses is not ground for reversal.

It is contended by the defendant that a witness cannot be asked if he has been convicted of a misdemeanor in order to test his credibility. This contention is without merit, because it has been repeatedly held by this Court that such question may be asked of witnesses as to convictions, both felonies and misdemeanors, in order to test the witness' credibility. *State* v. *Friedman,* 124 W.Va. 4, 18 S.E.2d 653, *State* v. *McMillion,* 127 W.Va. 197, 32 S.E.2d 625; *State* v. *Simmons,* 148 W.Va. 340, 135 S.E.2d 252.

With regard to the questions involving warrants for assaults on state's witnesses which were propounded to the defendant's witness Ray on cross-examination, the court allowed this cross-examination and limited it to a showing of prejudice or bias on the part of the witness, which is sanctioned by the authorities. *State* v. *Lawson,* 128 W.Va.

136, 36 S.E.2d 26; *State* v. *Hector,* 19 Ohio St. 2d 167, 249 N.E.2d 912; *Yarbrough* v. *State,* 105 Ala. 43, 16 So. 758; *Richardson* v. *Commonwealth,* 201 Ky. 395, 257 S.W. 8. The rule is aptly stated in 20 A.L.R.2d, § 7, pps. 1440, 1441, in the following language: "It is generally held, even in jurisdictions where such evidence is not ordinarily admissible, that the fact that a witness has been arrested or charged with crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely."

The third assignment of error relative to the giving of Instruction No. 4, offered by the state, because the Instruction omitted the words "knowingly or wilfully" is also without merit. This Instruction reads as follows: "The Court instructs the jury that an accessory before the fact is one who is absent at the time of the actual perpetration of the crime, but who procures, counsels, incites or abets another to commit the crime." This Instruction, in itself, clearly connotes knowledge on the part of an accessory, because one who procures, counsels, incites or abets another in the commission of a crime must have knowledge of the crime, otherwise, he could not counsel or abet it. However, Instruction No. 5, offered by the state, which is longer and more detailed, contains the words "with knowledge". Therefore, even if there is any merit to this assignment of error it would be cured by Instruction No. 5 offered by the state, because if Instruction No. 4 was incomplete it was corrected by Instruction No. 5, and instructions should be read as a whole. *State* v. *Prater,* 52 W.Va. 132, 43 S.E. 230; *State* v. *Harlow,* 137 W.Va. 251, 71 S.E.2d 330. This principle is succinctly stated in point 5 of the syllabus of the case of *State* v. *Harlow, supra,* which follows: "The giving of an incomplete instruction will not constitute reversible error if the incompleteness thereof is remedied by the giving of a correct instruction."

The last assignment of error dealing with the refusal of the trial court to set aside the verdict and grant the defendant a new trial because the verdict returned by the jury was improper and the assignment with regard to

newly discovered evidence are clearly without merit. The reasons heretofore discussed with regard to a motion for a directed verdict are applicable to the motion for a new trial inasmuch as the evidence was conflicting and would warrant the jury in returning a verdict of guilty. *State* v. *Winans, supra*. The assignment pertaining to newly discovered evidence is not well taken, because the fact that the principals who testified on behalf of the state had pleaded guilty and were being considered for probation was brought out in the trial. It was implied by counsel for the defendant that the prosecuting attorney had required the principals to testify in favor of the state as a requisite for their being granted probation. After this implication was introduced at the trial the principals stated that the only thing the prosecuting attorney asked them to do was to testify as to the truth. Moreover, the prosecuting attorney did not have the authority to grant probation. This authority rests solely with the court, and if the investigation for probation was favorable it could be assumed that it would be granted. Therefore, it could not be said that such evidence was after discovered evidence considering the facts of this case and would not come within the rule for the granting of a new trial on newly discovered evidence. *Halstead* v. *Horton,* 38 W.Va. 727, 18 S.E. 953; *State* v. *Spradley,* 140 W.Va. 314, 84 S.E. 2d 156; *State* v. *Farley,* 143 W.Va. 445, 104 S.E.2d 265.

A new trial on the ground of after discovered evidence is very seldom granted and unusual circumstances must exist. This guide is set out in syllabus point 9 of the case of *State* v. *Hamric,* 151 W.Va. 1, 151 S.E.2d 252, in the following language. "A new trial on the ground of after-discovered evidence or newly discovered evidence is very seldom granted and the circumstances must be unusual or special."

The defendant's contention that the jury's verdict of guilty of being an accessory before the fact to petit larceny is a legally impossible verdict is clearly without merit. In the first place, the instruction upon which the jury returned this verdict was offered by the defendant and given

by the court over the objection of the state. It was the first instruction offered by the defendant and reads as follows: "The Court instructs the jury that one of three possible verdicts may be returned in this case, if warranted by the evidence, namely: 1. Guilty of grand larceny. 2. Guilty of petit larceny. 3. Not guilty."

It has been consistently held by this Court, as well as courts of other jurisdictions, that a party cannot, by his own instructions, invite error and then complain of such error on appeal. *State* v. *Calhoun,* 67 W.Va. 666, 69 S.E. 1098; *Truschel* v. *Rex Amusement Co.,* 102 W.Va. 215, 136 S.E. 30, (*Cert. denied* 274 U.S. 736, 47 S. Ct. 574, 71 L. Ed. 1316); *William James Sons Co.* v. *Hutchinson,* 79 W.Va. 389, 90 S.E. 1047; *Lambert* v. *Goodman,* 147 W.Va. 513, 129 S.E. 2d 138. This principle was clearly stated in the case of *State* v. *Calhoun, supra,* in the fifth point of the syllabus, as follows: "Though there be error in instructions given on behalf of the prevailing party, yet the judgment will not for this reason be reversed if it appears that the same error was introduced into the record by instructions given at the instance of or was invited by the other party." In any event, a lesser verdict than accessory before the fact to grand larceny could be properly returned by the jury. See Code, 62-3-17, as amended; and *State* v. *Smith,* 130 W.Va. 183, 43 S.E.2d 802.

For the reasons stated herein, the judgment of the Circuit Court of Nicholas County is affirmed.

*Affirmed.*