# CHARLESTON.

## STATE v. CUTLIP *et al.*

Submitted April 18, 1916.    Decided April 25, 1916.

FALSE PRETENSES—*Larceny—Indictment—Ownership of Property.*
    An indictment charging attempt to steal or to obtain by false pretenses a promissory note, alleged to be "the property of the estate of Thomas McFall, deceased," is fatally defective on demurrer.

Error to Circuit Court, Braxton County.

E. W. Cutlip and another were convicted of larceny, and E. W. Cutlip brings error.

*Reversed, demurrer sustained, and accused discharged.*

*Haymond & Fox,* for plaintiff in error.

*A. A. Lilly,* Attorney General, *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, and *Hines & Kelly,* for the State.

LYNCH, JUDGE:

To reverse a judgment of conviction and imprisonment for a misdemeanor, E. W. Cutlip obtained this writ of error. Though indicted and convicted jointly with her husband, Mrs. Cutlip was granted a new trial. E. W. Cutlip complains of the denial of his motion to quash the indictment, and the adverse ruling on his demurrer thereto.

On January 6, 1913, defendants borrowed of Thomas McFall $632.50, for which they executed their note payable with interest one year after date. McFall was single, never having married, and lived alone and unattended. His dead body was found in the edge of a small drain near his residence February 2, 1913. A paper written by E. W. Cutlip, dated January 21, 1913, and signed by him and his co-defendant, was discovered enclosed in a large envelope concealed in the bed of McFall February 22, 1913. It purported to be a contract of sale by the defendants to McFall of a small tract of land for $632.50, the exact quantity to be ascertained by survey, and, when so ascertained and a general warranty deed therefor made to him, McFall was to surrender to the grantors the note executed by them, as the consideration for the conveyance. McFall's name was not affixed to the paper; nor was it acknowledged by either of the Cutlips.

This paper the indictment charged was prepared and signed after the death of McFall, and that the defendants unlawfully and fraudulently did pretend they had entered into contract as of the date it purports to bear, by means of which false pretense they did then and there unlawfully attempt and endeavor to obtain "from the estate of Thomas McFall, deceased, a certain promissory note," describing it as the note dated January 6, 1913, "of the value of $632.50, of the property of the estate of said Thomas McFall, deceased, with the intent then and there to cheat and defraud the said estate of the said Thomas McFall of the same." The second count charged the attempted larceny of the note as of the same value and "of the property of the estate of said Thomas McFall, deceased."

If either the motion or demurrer ought to have been sustained on grounds other than the allegation of ownership,

that being the only defect pointed out, no opinion need be expressed, if that objection may be deemed sufficient to discharge defendants from further prosecution under this indictment.

In Virginia, as early as *Barker* v. *Com.*, 2 Va. Cas. 122, an indictment for larceny of bank notes was held fatally defective unless it charged the notes were the property of some person therein named, or of some person to the grand jurors unknown, and that such defects were not cured by the statute of jeofails—our chapter 158, sections 7, 9 and 10. The ownership alleged must be laid in some person living; or, if the former owner be dead, in his personal representative, as the person entitled to the immediate possession and control of the property. 12 Enc. Pl. & Pr. 971; 25 Cyc. 95. A recognizance alleging wrongful and fraudulent asportation of a buggy, "the property of the estate of Raleigh Hightower, deceased," did not, as held in *State* v. *Woodley*, 25 Ga. 236, allege the buggy to be the property of any person, and, hence, did not charge the larceny thereof. One who is dead can not own property. Death terminates his ownership. So an indictment is not good if it states the goods stolen to be the property of a deceased person. *United States* v. *Mason*, 2 Cranch. C. C. 1196, 26 Fed. Cas. No. 15,738. In *People* v. *Hall*, 19 Cal. 425, an indictment for causing the alteration of the brand of a horse with intent to steal it, and laying the property as that of an estate, was held bad, the court adding that to be sufficient the indictment should have charged that the animal belonged to some certain person or that its owner was unknown.

The necessity for this certainty subsequently was removed by statute in California. See 112 Cal. 335, where the enactment was quoted. Likewise, because of similar statutory provisions, an indictment laying property in the estate of a deceased person was held sufficient in *State* v. *Sherman*, 71 Ark. 349. With us there is no such statute. In this state the common law rule, requiring an allegation of ownership in an indictment, remains unaltered; and, as an estate is not a person, an averment of ownership of an estate of a decedent is not sufficient. In England, the ownership of goods eloigned.

may be laid in the ordinary where the owner has died intestate and the property is stolen before the qualification of his personal representative. 25 Cyc. 95, note 69. It is necessary that there should be in some person ownership of the things stolen, and that they should be stated in the indictment as the goods or property of such person. 2 Russ. on Crimes 86. Agreeably to this rule of the common law, the Virginia appellate court, in *Hughes* v. *Com.*, 17 Gratt. 565, said: "In an indictment for larceny the name of the owner of the property charged to have been stolen must be stated." In that case it was held also that, as the law then was, an averment of ownership by a married woman rendered the indictment bad, and, what is directly applicable here, that the common law rule as to ownership of such property was not changed by sec. 8, ch. 207, Virginia Code; that section and our sec. 7, ch. 158, being in the same language.

These essential requirements were recognized in *State* v. *Heaton*, 23 W. Va. 774. Ownership of the horse stolen was held to be properly laid in the widow of the deceased owner, in the absence of the appointment and qualification of an administrator, the horse having in the meantime remained on the farm of the decedent and in the custody and control of the widow, the surviving children being infants, and no sale or distribution of the estate having taken place. Lord Hale, in 1 Pleas of the Crown 510, said: "Larceny can not be committed of such things whereof no man hath any determinate property, and every indictment of larceny ought to suppose the goods stolen to be the goods of somebody," although if alleged as the property of "*cujusdam ignoti*" it is good.

The indictment being clearly defective for the reasons stated, defendants erroneously were convicted of the offense charged, if indeed they were charged with the commission of any offense. Our order therefore will reverse the judgment, sustain the demurrer, and discharge the accused from further prosecution thereunder.

What consequences may follow should defendants hereafter undertake to prevent or defeat collection or payment of the

note, or any proceeding to require them to account therefor, by the use of the paper averred to be fraudulent, we express no opinion at this time.

*Reversed, demurrer sustained, accused dismissed.*