# CHARLESTON.

## STATE *v.* D. P. FERREE.

Submitted April 13, 1921.     Decided April 19, 1921.

1.   CRIMINAL LAW—*State Courts Have Jurisdiction of Larceny of Goods from Possession of United States while Operating Railroads.*

   Neither section 11, chapter 25, Act of Congress of March 21, 1918, 40 Stat. 457, nor any other section thereof, deny to state courts jurisdiction of the crime of larceny of goods stolen from the possession of the United States while operating a railroad pursuant to Federal control authorized by said act or any other act of Congress in relation thereto. (p. 435).

2.   LARCENY—*Indictment Charging Larceny of Property of United States Railroad Administration is Bad.*

   The charge in an indictment for the larceny of such goods, that they were "of the goods and chattels of the United States Railroad Administration, Baltimore and Ohio Railroad," there being no such person or corporation as the United States Railroad Administration, created by act of Congress or otherwise, or recognized or designated in any statute of the United States or proclamation of the President, is fatally defective on demurrer for failure to properly aver ownership or possession or special property in the goods stolen, and the indictment should be quashed. (p. 437).

Certified questions from Circuit Court, Ritchie County.

Criminal prosecution by the State against D. P. Ferree. A demurrer to the indictment was overruled and the question of its sufficiency certified to the Supreme Court of Appeals.

*Reversed, and defendant discharged.*

*Thos. J. Davis* and *J. W. Vandervort,* for the State.

*S. O. Prunty, R. E. Bills* and *C. M. Hanna,* for defendant.

MILLER, JUDGE:

The question certified is the sufficiency of the indictment, which the court on demurrer held to be good, as follows:

"The Grand Jurors of the State of West Virginia, in and for the body of the County of Ritchie, and now attending

the said court, upon their oaths present: That D. P. Ferree, on the — day of February, 1919, in the said county of Ritchie, three (3) hundred pounds of sugar, of the value of Thirty Dollars ($30.00) of the goods and chattels of the United States Railroad Administration, Baltimore and Ohio Railroad, then and there being found, unlawfully and feloniously, did steal, take and carry away, against the peace and dignity of the State.''

The propositions on which defendant challenges the ruling of the court below are two: First, that by section 10164 Barnes' Federal Code, Congress has withdrawn to Federal courts sole jurisdiction of offenses like the one charged in the indictment; Second, that the averment that the goods alleged to have been stolen were ''the goods and chattels of the United States Railroad Administration, Baltimore and Ohio Railroad,'' is too uncertain and ambiguous to be descriptive of the ownership of such goods, and that the indictment is bad for this reason.

The statute referred to is section 11, chapter 25, Act March 21, 1918; 40 Stat. 457, as follows:

''Every person or corporation, whether carrier or shipper, or any receiver, trustee, lessee, agent, or person acting for or employed by a carrier or shipper, or other person, who shall knowingly violate or fail to observe any of the provisions of this Act, or shall knowingly interfere with or impede the possession, use, operation or control of any railroad property, railroad or transportation system hitherto or hereafter taken over by the President, or shall knowingly violate any of the provisions of any order or regulation made in pursuance of this Act, shall be guilty of a misdemeanor, and shall, upon conviction, be punished by a fine of not more than $5,000.00, or, if a person, by imprisonment for not more than two years, or both. Each independent transaction constituting a violation of, or a failure to observe, any of the provisions of this Act, or any order entered in pursuance hereof, shall constitute a separate offense. For the taking or conversion to his own use or the embezzlement of money or property derived from or used in connection with the possession, use

or operation of said railroads or transportation system, the criminal statutes of the United States, as well as the criminal statutes of the various States where applicable, shall apply to all officers, agents and employees engaged in said railroad and transportation service, while the same is under Federal control, to the same extent as to persons employed in the regular service of the United States. Prosecutions for violations of this act or of any order entered hereunder shall be in the district courts of the United States, under the direction of the Attorney General, in accordance with the procedure for the collection and imposing of fines and penalties now existing in said courts.''

The act from which this section is taken is one of the several war measures enacted in aid of the national defense, and the operation of the railroads taken over by the President to that end, and to protect the government from interference with the operation, control and management thereof. The offense charged is not against any one of the several classes of persons described in the section for knowingly interfering with or impeding the possession, use or operation or control of the railroad property taken over by the President. Assuming that the sugar alleged to have been stolen is of the class of property derived from or used in connection with the possession or operation of the railroad, the section quoted, by its plain terms, provides that the criminal statutes of the various states when applicable, as well as the Federal statutes, shall apply to all officers, agents and employees engaged in said railroad transportation service while under Federal control.

Certainly the offense of stealing three hundred pounds of sugar, charged in the indictment, is a crime to which the state statutes are applicable, and state jurisdiction of the offense can not be regarded as taken away by the provision of said section 11, that prosecutions for violations of said act shall be in the district courts of the United States, under the direction of the Attorney General; for section 15 of the same act, section 10168 Barnes' Federal Code, specifically provides that: ''Nothing in this act shall be construed to amend, repeal, impair or affect the existing laws or powers

of the States in relation to taxation or the lawful police regulations of the several States, except where such laws, powers or regulations may affect the transportation of troops, war materials, Government supplies, or the issue of stocks and bonds.''

The indictment here runs in the name of the state and charges defendant with committing a crime against the peace and dignity of the state.  There is no attempt to charge him with an offense prescribed by the Federal statute.  The act of Congress evidences no purpose or intention to supersede the state statutes, nor to withdraw from the states, if that were possible, jurisdiction over crimes committed within a state.  It matters not that the larceny charged may have been of the goods and chattels of the United States or the United States Railroad Administration, the state statutes are applicable to the larceny of the goods of anyone.  Whether our state statutes would be applicable to some of the things made offenses by the Federal statutes, we need not say, for the question is not involved.

On the second proposition, that the indictment is ambiguous and uncertain as to the ownership or possession of the goods alleged to have been stolen, we take judicial notice of the public statutes of the United States and of the fact that a state of war existed at the time of the offense and of the finding of the indictment, and that under the several acts of Congress relating thereto the railroads of the country were taken over by the President and were being operated and administered by the United States Government.  *Bayly's Admr.* v. *Chubb,* 16 Gratt. 284; *Bird* v. *Commonwealth,* 21 Gratt. 800; *Dickinson* v. *Railroad Co.,* 7 W. Va. 390, 417; and also of the proclamations of the President, but not of departmental acts having no such character.  *Spring* v. *Am. Tel. & Tel. Co.,* 86 W. Va. 192, 103 S. E. 206; *Peacock* v. *Detroit, Etc. Ry. Co.,* (Mich.) 9 A. L. R. 964.

But there is nothing in the statutes of the United States, nor in the proclamations of the President, of December 26, 1917, and November 16, 1918, taking over the railroads and other transportation lines, designating Federal control to

be under the United States Railroad Administration as a commission to operate such transportation lines. The proclamation of December 26, 1917, authorized Newton D. Baker, Secretary of War, to take possession and assume control of such transportation lines. Later, the operations thereof were put in control of William G. McAdoo, as Director General of Railroads. But the operation authorized was that of the United States, under the statutes. These statutes and the proclamation are set forth in the recent case of *United States* v. *Kambeitz,* 256 Fed. Rep. 247; and on appeal to the Circuit Court of Appeals, (Second Circuit), 262 Fed. Rep. 378. The question, therefore, is presented whether the allegation in the indictment, that the property stolen was that of the United Sates Railroad Administration, complies with the rule of the common law requiring the ownership of the property to be alleged if known, or if not, that the owner is to the grand jurors unknown, so as to render the indictment good on demurrer. In *State* v. *Heaton,* 23 W. Va. 773, ownership of the property stolen (a horse) was held to be properly laid in that case in the name of the widow of the deceased owner. There the horse, prior to the appointment of an administrator, had remained on the farm of the decedent in the possession of the widow, the several children being infants. In the case cited, Russel on Crimes is quoted for the common-law rule to the effect that the ownership of the property may be laid in a person who has only a special interest in the goods, as a lessee, bailee, pawnee, carrier and the like. This rule of the common law so interpreted has been recognized and applied in numerous subsequent cases in this court, among them *State* v. *Ringer,* 84 W. Va. 546. In the case of *State* v. *Cutlip,* 78 W. Va. 239, we held that an indictment averring that the promissory notes alleged to have been stolen, were the property of the estate of Thomas McFall, deceased, was fatally defective on demurrer, citing numerous cases, state and Federal, affirming the same proposition. In the Federal case referred to, the indictment found under said section 11 of the Federal act, and section 47 of the Criminal Code, (Chapter 321, Act March 4, 1919; Comp. Stat., sec. 10214),

properly laid the ownership of the property stolen in the United States, as the carrier having such special property therein, and as complying with the rule of the common law. There is no recognition in the opinions of the district court or the circuit court on appeal, of the sufficiency of an indictment drawn as the one involved here, charging ownership in the United States Railroad Administration. There is no such personal entity or corporation as the United States Railroad Administration, in whom or in which ownership could be properly laid. For the defect in the allegation of ownership of the sugar stolen here presented, we think the indictment is bad and should have been quashed on demurrer.

Our conclusion, therefore, is that the judgment below must be· reversed and the prisoner discharged from prosecution thereunder, and we will so certify our conclusion to the circuit court.

*Reversed, and defendant discharged.*