# CHARLESTON.

### PHIL COHEN v. S. L. MATZ.

Submitted January 30, 1923. Decided February 13, 1923.

APPEAL AND ERROR—*Verdict Not Disturbed Unless Manifestly Wrong.*

The verdict of a jury is entitled to great respect, and where a case has been fairly submitted to the jury, upon proper instructions, and a verdict fairly rendered, it should not be interfered with, unless manifest wrong and injustice has been done, or unless the verdict is plainly not warranted by the facts.

Error to Circuit Court, Mercer County.

Action by Phil Cohen against S. L. Matz. From a judgment for plaintiff, defendant brings error.

Affirmed.

*Sanders, Crockett & Fox,* for plaintiff in error.
*John Kee* and *John R. Dillard,* for defendant in error.

MEREDITH, JUDGE:

Plaintiff Cohen sued defendant in assumpsit to recover the value of certain motion picture house equipment, located in the city of Bluefield, and alleged to have been sold to defendant under a verbal agreement. He recovered a judgment for $2,671, and defendant obtained a writ of error.

The declaration, consisting of two counts, alleges that plain-

tiff, in October, 1917, delivered the equipment, which included, among other things mentioned, two moving picture machines and screen and one Wurlitzer organ, "on the terms that the said defendant would purchase the same and make payment therefor at the reasonable value thereof by transferring to the plaintiff a one-half interest in a saloon business at the time owned by said defendant in the city of Cincinnati, State of Ohio, or return the said goods to the plaintiff," which undertaking the defendant promised to perform. Further allegations set out the failure of the defendant to carry out his promises and undertakings, and fix the value of the equipment at $3,000. A statement of account filed with the declaration itemizes the articles alleged to have been sold. Suffice to say, the list shows 16 items, of the total value of $3,000, chief among which are the two moving picture machines and screen, valued at $711, and the Wurlitzer organ, valued at $1,647.

Defendant pleaded non-assumpsit, and filed an account of set-offs against plaintiff's claim, which may be summarized as follows:

1. A negotiable note dated April 13, 1917, payable in 4 months to the order of S. L. Matz, and signed by Phil Cohen:       $   300.00

2. A negotiable interest bering note, dated January 12, 1917, payable in 4 months to the order of of S. L. Matz, signed "Colonial Theatre, by Phil Cohen:       404.00

3. Eighty-six interest bearing negotiable notes, dated March 15, 1916, payable 14 to 100 weeks after date to the order of Rudolph Wurlitzer Company, Inc., for the sum of $40.00 each, signed by Philip Cohen and assigned by the payee to Sam L. Matz by a contract of sale and assignment dated October 25, 1917:       3,440.00

Total: $4,144.00

Although defendant filed the plea of set-offs, and some proof was introduced relative to the items of which it is com-

posed, his case is principally built around another theory. It is his contention that the equipment delivered to him was not to be compensated for by any interest in a saloon in Cincinnati, of elsewhere, but that plaintiff delivered to him the property by way of settlement of claims which defendant already had against the plaintiff. Chief among these claims was an account for back rents, aggregating some $2,400 or $2,600, which defendant testifies were due him upon the theatre building occupied by plaintiff and owned by the defendant. The other items of the claim would seem to be on account of money borrowed at different times by plaintiff in connection with various business enterprises.

We thus have two fairly clear theories of the case. Plaintiff claims to have delivered $3,000 worth of motion picture equipment to defendant in consideration for which he was to have, but never did receive, a one-half interest in a saloon in Cincinnati. Defendant, on the other hand, denies *in toto* that the saloon entered into the transaction, denies in fact that he ever owned a saloon, and claims that the equipment was sold to him to satisfy past debts. The jury's verdict sustained the plaintiff's version of the case, and as the attack upon that verdict as being unsupported by the proof is the chief issue in the case, we must consider the facts as they appear.

Plaintiff began his business relations with defendant, so far as the record shows, on July 1, 1914, when he rented the business room, later known as the Colonial Theatre Building, for the purpose of conducting a soft drink business therein. The rent at that time was $150 per month. He operated the soft drink business for a considerable period, after which, at the plaintiff's request, the building was converted into a motion picture house. Because of the expense attending the remodeling, and other reasons, the rent was then increased to $350 per month. Defendant says the soft drink business continued 10 or 12 months after July 1, 1914. Plaintiff states that he opened the Colonial Theatre in March, 1916. The latter date seems correct. During the period from March until July, 1916, the motion picture business was

managed for plaintiff by Maury Barrett; from July, 1916, to October, 1916, by James L. Brown, and from October, 1916, to October, 1917, by R. S. Wehrle. The rent was reduced to $50.00 per week when Brown took charge, and remained at that figure until the tenancy came to an end, October, 1917.

On March 2, 1916, plaintiff purchased the Wurlitzer organ, heretofore referred to, and installed it in the theatre. The purchase price, as evidenced by the contract of purchase and conditional sale agreement, copies of which appear in the record, was $4,850, less a $350 credit for advertising. $500 was paid down, and the balance of $4,000 was represented by 100 notes of $40.00 each, bearing date, March 15, 1916. Plaintiff met the payments at the rate of $40.00 per week until June 26, 1916, from which time he made no payments until February 7, 1917, when he paid $15.00 per week, continuing to do so until October 16, 1917. The reduction in the weekly payments was made by agreement with the Wurlitzer Company. Plaintiff paid in all, $1,360 on the notes, $500 in cash, and $350 by way of the advertising credit, leaving a balance due of $2,940 when he turned the property over to the defendant.

The above are about all the material facts, concerning which there is no serious dispute. Plaintiff quit the business, gave up his leasehold and turned the property over to defendant in October, 1917, probably about October 20, 1917. Plaintiff expected to enter the naval service of the United States, and defendant demanded his building for his own purposes, so the actual termination of the lease gives rise to no controversy. The trouble arises over a misunderstanding as to the terms of settlement.

Three written instruments figure in the controversy. The first of these is a bill of sale. It is dated March 15, 1917, and is signed by Philip Cohen. In it for a recited considertion of $10.00 and other considerations, the receipt of which is acknowledged, the plaintiff conveyed to Samuel L. Matz all of the equipment in the theatre except the Wurlitzer organ. The more important items of equipment are enumerated.

The second instrument of importance is a receipt, also dated March 15, 1917. It is as follows:

"In consideration of the sum of five ($5.00) dollars cash in hand to me paid, receipt of which is hereby acknowledged, and other good and valuable consideration not herein expressed, but received by me nevertheless, and hereby acknowledged, I hereby release Philip Cohen from all indebtedness to me, with the exception of the amount due me from him for rent on the Colonial Theatre, located at Number 443 Princeton Avenue, Bluefield, West Virginia.

Given under my hand and seal the 15th day of March, 1917.

SAM L. MATZ, (Seal).

Witness: R. S. Wehrle."

The third paper, also receipt, reads:

"In consideration of the sum of ten ($10.00) dollars cash in hand to me paid, receipt of which is hereby acknowledged and other good and valuable consideration not herein mentioned, I hereby release Philip Cohen of any and all rents due me from him on the Colonial Theatre, located at Number 443 Princeton Avenue, Bluefield, West Virginia.

Given under my hand and seal this 27th day of October, 1917.

SAM L. MATZ, (Seal).

Witness: . . ."

These documents would seem to shed light on the settlement entered into. Viewed in the light of the evidence, they rather obscure it. We will first consider the position taken by the plaintiff. His evidence consists of the testimony of himself and his brother, Sam Cohen. Plaintiff denies that either of the papers dated March 15, 1917, were in fact executed on that date, but claims they were signed in the month of October following. He maintains, and is supported by his brother, that in October, seemingly about the 20th, he entered into a verbal agreement with defendant, that the latter would take over all of plaintiff's equipment in the pic-

ture show, and would give him therefor a one-half interest in a saloon in Cincinnati owned by defendant and managed by defendant's brother, Joe Matz. These negotiations took place, according to their testimony, partly in the theatre, and partly in defendant's room in the Matz Hotel, and in the presence of the plaintiff, plaintiff's brother, defendant, and Russell Wehrle. Plaintiff claims that in order to carry out the deal, defendant decided to go to Cincinnati, there to make arrangements as to the saloon, and also to arrange with the Wurlitzer Company as to the balance due on the organ. Shortly before leaving Bluefield on that trip, plaintiff states that defendant just as defendant's train came in, on which he was going to Cincinnati, hurriedly handed him the bill of sale to sign along with the two receipts. Plaintiff signed the bill of sale, and returned it and the receipts to defendant. It must be borne in mind that these events are supposed to have occurred on October 20th. He accounts for the dating of the papers in a peculiar way. He says that although defendant, under the verbal agreement, was to have all the equipment including the organ, the defendant purposely excepted the organ from the bill of sale, and purposely predated the bill of sale and receipt so that they bore date, March 15, 1917. This receipt, quoted above, released all claims against plaintiff except rents due on the Colonial Theatre. This, according to plaintiff, was an artifice conceived by defendant, to make it appear that plaintiff was in arrears on his rent and that defendant held a landlord's lien on the organ. By so doing, defendant was to attempt to purchase the Wurlitzer Company's rights in the instrument for much less than was rightfully owing to it. The other receipt, which, plaintiff says, represented the true state of facts, was dated October 27, and covered all claims including rents, and was for plaintiff's protection. To further complicate the situation, plaintiff seems to have copied the receipt of March 15th, and in doing so to have dated his copy October 20th, the date of its actual execution, if plaintiff's version be the true one. Plaintiff admits his acquiescence in the arrangement, as de-

fendant had his bill of sale, and plaintiff was anxious to get his interest in the saloon without a hitch. He says that under the arrangement if defendant's deal with the Wurlitzer company went through, defendant was to wire him to come to Cincinnati. He failed to wire plaintiff, but wired R. S. Wehrle, on October 22, as follows: "Skeer of *Wirlitzers* leaving for Williamson and Bluefield to remove organ. Attach in my name for amount of rent due me." The telegram tends to support plaintiff's theory.

Defendant denies practically every circumstance of plaintiff's explanation of the settlement. He asserts that the written instruments are properly dated; that in March plaintiff turned over all of the equipment, except the organ, just as stated in the bill of sale, receiving therefor a release of all claims except claims for rent on the theatre; and that in October plaintiff turned over his interest in the organ, in exchange for which he received a release covering the rents and a $300 note executed by plaintiff in April, 1917. Defendant's chief witness is R. S. Wehrle. They testify that the papers dated March 15th were drawn in the office of Howell M. Tanner, an attorney of Bluefield who was not a witness, and that "we got around the table and signed the things up together." Questioned particularly, defendant stated the "other good and valuable considerations" recited in the release of March 15th were "Several different accounts that he owed me, cash items that I had loaned him from time to time, and some notes that he wasn't able to pay, that I took up, some for a hundred and some for two hundred, and this particular note I just had." The particular note referred to was one for $404 dated January 12, 1917, signed by the Colonial Theatre by Phil Cohen and payable in 4 months to S. L. Matz, being item No. 2 of defendant's claim of set-off. Aside from the one note for $404, however, defendant failed to produce any evidence of the debts which he claims were incurred by plaintiff prior to March 15th. Defendant asserts that he advanced money to the plaintiff from time to time without taking notes or other security therefor, but the jury likely regarded these statements as

unconvincing. He urges insistently that on March 15, 1917, plaintiff was in arrears on his rents to the extent of $2,400 or $2,600, yet plaintiff produced his cancelled checks showing that the rent was paid regularly from August 3, 1916 to October 13, 1917, and denied that there was any rent owing on the period prior thereto.

Defendant, of course, denies the alleged scheme to defraud the Wurlitzer company. He claims that the bill of sale and the receipts represent the transactions just as they occurred. He denies that he owned or pretended to own a saloon in Cincinnati at the time in question. He does admit, however, that after the deal for the theatre equipment and organ was finally closed in October, and the final receipt was given, the future affairs of plaintiff were discussed, and that he told plaintiff he would get him a job in his brother's saloon in Cincinnati, if plaintiff so desired, but that plaintiff declined to leave Bluefield.

We deem it unnecessary to detail the evidence further. It is hopelessly conflicting. As is often the case, the jury had the advantage of this court. They observed the witnesses and their demeanor on the stand. Even from the printed pages of the record, we think we can discern certain peculiarities in the testimony for the defense which do not enhance its evidentiary value. Plaintiff's version of the circumstances is somewhat startling, but we find the evidence adduced in support of it surprisingly consistent. We would not be justified in disturbing the verdict.

In addition to his chief attack upon the verdict, defendant raises other contentions in his brief. He argues that evidence of compromise and settlement having been shown, such evidence was controlling unless the plaintiff proved fraud in the procurement of the settlement. Upon this score, defendant has no cause for complaint, his instruction No. 4, which covers this proposition in as favorable a manner as is contended for by counsel, was given by the trial court, and it is to be presumed that it was considered by the jury in its deliberations. On this point also, we are governed by the jury's finding.

Defendant argues somewhat strenuously that the jury erroneously refused to consider his claim of off-sets. These off-sets, it will be recalled, consisted of two notes, one for $300, the other for $404, past due and on their face unpaid; and the unpaid installments on the organ amounting to $3,440. True it is, that the plaintiff could not consistently claim that his interest in the organ and equipment were exchanged for an interest in the saloon, and at the same time say that they were turned over in settlement of existing obligations; but we do not understand that the verdict and judgment necessarily rests upon any such inconsistency. As to the unpaid installments on the organ, it must be remembered, that according to the jury's findings as to the exchange, defendant acquired an organ worth $3,600, in which the value of the plaintiff's equity was fixed at $1,318. It was for this equity alone that the judgment of the court held defendant responsible. Except so far as he erred in business judgment, he received in the organ full value for the obligations which he assumed in favor of the Wurlitzer company. As to the two notes, there is evidence in the record that plaintiff and defendant were associated together in the taxi cab business, to further which, plaintiff executed and defendant endorsed notes; and that they signed checks and notes on behalf of each other as occasion required. Plaintiff was not cross-examined in regard to the two notes, he testified that these matters had ''all been settled up,'' and the jury was of the same opinion.

Defendant's instructions Nos. 1, 3 and 5 were properly refused. No. 1 was peremptory. No. 3 in effect asserted that a settlement once entered into is in all events binding and conclusive; and No. 5 included the statement that there was no controversy about the items making up defendant's claim of off-sets, amounting to $4,144.00. All these instructions were objectionable.

Before announcing our order in this case, we wish to call attention to the fact that in practically all of the issues raised we are urged by the defendant to set aside a verdict and judgment as being contrary to the weight of the evidence.

As the evidence on those issues is, as to all important matters, highly conflicting, the verdict, under our decisions, must be respected.

> "To justify setting aside a verdict in a case involving conflicting oral evidence, on the ground alone that the verdict is plainly against the decided weight and preponderance of conflicting evidence, the court must go beyond the question of the credibility of the witnesses who gave conflicting oral evidence in the presence of the jury, and find documentary evidence, uncontroverted evidence, facts or circumstances, or some of these, which when considered with such conflicting oral evidence plainly constitutes a decided weight and preponderance of evidence against the verdict." *Coalmer* v. *Barrett*, 61 W. Va. 237, 56 S. E. 385.

To the same or similar effect, see many cases cited, Vol. 1, Cum. Sup. Michie's Ency. Dig. Va. & W. Va. Reports, p. 386.

The judgment of the circuit court will, therefore, be affirmed.

*Affirmed.*