# CHARLESTON.

DEWEY GOLDEN, *use* GEORGE ENSMINGER *v.* SALKELD COAL COMPANY.

(No. 5401.)

Submitted March 30, 1926.   Decided April 13, 1926.

APPEAL AND ERROR—*Verdict for Plaintiff Will Not be Disturbed if Evidence is in Sharp Conflict and There Was No Error Committed by Trial Court.*

> A verdict for the plaintiff will not be disturbed by the appellate court where the evidence on the controlling questions of fact is in sharp conflict, and it appears that there has been no error of law committed by the trial court.

> (Appeal and Error, 4 C. J. § 2836.)

> (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Barbour County.

Action by Dewey Golden, to the use of George Ensminger, against the Salkeld Coal Company on a contract. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*J. Blackburn Ware,* for plaintiff in error.
*Wm. T. George,* for defendant, in error.

WOODS, JUDGE:

This action was originally instituted before a justice of the peace of Barbour county by George Ensminger, in the name of Dewey Golden, for his use, against the Salkeld Coal Company, a corporation, to recover extra compensation, which plaintiff claimed the company had agreed to pay Golden upon the adoption of a higher wage scale by the United Mine Workers of America. Judgment was entered for the plaintiff, and defendant appealed to the circuit court, where the case was tried *de novo*. Upon the re-trial, the plaintiff was awarded a judgment of $181.06, which included the amount of the claim, plus interest. From this judgment the defendant comes here on writ of error.

On March 31, 1922, the day before all union miners' were called on strike, the employees (including Golden) of the defendant company, working non-union, went to the superintendent and manager and told them that they would quit if they didn't receive the union scale of wages to be later adopted. The manager told them that he would call the office in Pittsburgh and ascertain the company's attitude, and on the following day informed the men that if they would continue work that on the adoption of the union scale the company would pay each man any excess over the rate the company was then paying, but if less, that no deduction would be made. The union scale went into effect August 1, 1922. Golden quit working for defendant company, after notifying the manager, on June 2, 1922. He claims that he is entitled to the difference between what he actually received for his services and the scale adopted for motormen, which plaintiff's witnesses place at 90-3/4c per hour. This claim was assigned to the plaintiff Ensminger.

The two issues raised by the record are: (1) What were the terms of the contract; and (2) did the manager have authority to make the contract?

The plaintiff contends that the only limitation of the contract was that the men would be paid if they did not walk out on strike; while the company claims that it intended to pay only those who remained in its employ at the time the

scale actually went into effect.  Dewey Golden testified that the manager told the men to go ahead and work and whatever the union scale was set at, he would pay that if it was more than they were getting; that according to the scale adopted by The United Mine Workers his type of work was fixed at 90-3/4c per hour; that he later told the manager that he was going to stop, and that the manager in reply told him to go ahead and work, and that when the scale was signed up that he would pay any additional wage from the first of April on.   George Ensminger, though informed concerning the company's agreement at a different time, brought suit and recovered his claim in full for the time he worked.   He was not in the employ of the company when the scale went into effect.   Everson was present at the conference with the superintendent and manager on March 31, but not present on April 1. He received his information indirectly concerning the company's promise and later recovered in full for his services.   Even the defendant company's manager testified that during the second conference two of the men asked if they would receive pay if not in the employ of the company at the time the scale went into effect, and that in view of the fact that they were ''ring-leaders'', that he said that the ''company would take care of them.''  The rest of defendant's witnesses testified that they remained in the employ of the company and have either received all of their back pay, or a portion thereof on compromise, and further that the contract was to pay those in the employ of the company at the time the union scale became effective.  In view of the conflict in the evidence as to the real contract, this matter was properly left to the jury for their determination.

Had the manager authority to make such contract?  The very fact that the men intended to quit; that the manager, after taking the matter up with the company, informed the men that all those who remained in the employ of the company would receive back pay, if the scale to be fixed was higher than they were then receiving; that the men continued to work, and that the company has paid claims of other employees, all tend to show that the company had undoubtedly given the manager authority to so promise the miners then

in their employ. In fact there seems to be no real contention that the authority was not given to the manager to make a contract—the only controversy being as to its terms.

The instructions given for the plaintiff over the objection of the defendant properly instructed the jury on the plaintiff's theory of the case. The defendant's theory was clearly stated in the three instructions given at its instance. The fourth instruction requested by defendant was rightly refused since it was covered in substance by instruction number two.

Where the evidence is conflicting on a material issue, as here, and the case has been fairly tried and submitted to a jury on proper instructions, a verdict for the plaintiff will not be disturbed by this Court. *Roberts* v. *Toney,* 100 W. Va. 688; *Knight* v. *Coal Company,* 99 W. Va. 261; *Wilson* v. *Amusement Company,* 99 W. Va. 290; *Kidwell* v. *Norfolk & Western Ry Co.,* 94 W. Va. 131; *Cohen* v. *Matz,* 93 W. Va. 124; *Minotti* v. *Brune,* 94 W. Va. 181.

*Affirmed.*