# CHARLESTON.

STATE *v.* JOHN JANKOWSKI

(No. 5635)

Submitted September 21, 1926. Decided September 28, 1926.

1. INTOXICATING LIQUORS—*John Doe Search Warrant, Describing Premises to be Searched for Alcoholic Liquor, is Valid.*

   Syllabus in *State* v. *McKeen,* 100 W. Va. 476 (on validity of statutory search warrant), approved and applied. (p. 236.)

   (Intoxicating Liquors, 33 C. J. § 378.)

2. NEW TRIALS—*Verdict Should Not be Set Aside for Insufficiency of Evidence, Where Sufficiency Depends on Credibility.*

   A verdict of a jury should not be set aside on the ground of insufficient evidence, where the sufficiency depends upon the credibility of the witnesses, and the reasonable inferences which may be drawn therefrom. (p. 237.)

   (Criminal Law, 17 C. J. § 3596.)

3. SAME—

   A verdict will not be set aside because of an instruction not technically perfect having been given, where it is clear that the jury could not have been misled thereby or have made a misapplication thereof to the facts proved. (p. 238.)

   (Criminal Law, 17 C. J. § 3688.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Marshall County.

John Jankowski was convicted of the unlawful possession of moonshine liquor, and he brings error.

*Affirmed.*

*Martin Brown,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *J. Luther Wolfe,* Assistant Attorney General for the State.

LIVELY, JUDGE:

Jankowski was convicted on an indictment charging him with the unlawful possession of moonshine liquor, and was sentenced to confinement of thirty days with labor, and to pay a fine of $100.00. He prosecutes error.

The defendant conducted a general store in a two-story frame building at the corner of Thompson Avenue and 14th Street in the City of Moundsville, where he also resided with his wife and several small children. The storeroom and a wareroom adjoining it, both facing the avenue, took up the floor space of the first floor, except in the rear of the wareroom defendant had constructed partitions making two smaller rooms which he used and occupied as kitchen and dining-room, respectively. The wareroom could be entered through a door in the partition separating it from the dining-room, also from the storeroom by a door through the partition separating them, and through a door from the front on the avenue. To the left of the wareroom was a hallway entrance to the second story up a stairway. The second floor space was divided into several rooms or apartments where defendant and family slept, the other rooms being for rental as apartments or to transient lodgers. At the time of the arrest, a Mrs. Purbola and her little girl were the only lodgers on the second floor, where they occupied three rooms. They had been there three days before the officers came to search the house for intoxicants. A stairway went up from the kitchen to the hallway on the second floor. The wareroom (where the moonshine whiskey was found) could only be entered from the front, from the storeroom, and from the dining-room. Several officers armed with a search warrant came to the building about

10 o'clock at night; entered the hallway from the avenue, ascended to the second floor, which some of them searched, while others descended the stairs into the kitchen at the rear and found defendant and his family. Upon search the officers found three-half gallon jars of moonshine liquor concealed between the ceiling of the wareroom and the floor of the second-story, which they reached by a stepladder found in the storeroom.

The defense was that defendant knew nothing about this liquor; that presumably some other person or persons unknown had concealed it there without the knowledge of defendant. Defendant denied any knowledge of the liquor, and the evidence on his behalf is that at the time the liquor was found, repairs were being made to the building, including the wareroom, by carpenters, electricians and painters, the inference being that these workmen may have concealed the liquor. Mrs. Purbola said that she had smelled the scent of liquor on one of the workmen who stood nearby her when she was in the storeroom a day or so before the arrest.

The main grounds of alleged error are: (1) the search warrant was void, and therefore all of the state's evidence obtained thereby, and objected to, was inadmissible; (2) the evidence was insufficient to sustain the verdict; and (3) the state's instructions were bad.

It is argued that the search warrant was illegal because it did not particularly describe the person to be searched. The search warrant, in substance, recites that complaint on oath had been made that John Doe on a certain date did in the county unlawfully manufacture, sell, expose &c. intoxicating liquors, and that complainant had cause to believe and did believe that such liquor was being manufactured, sold, offered &c. in that certain two-story frame building situate at the southeast corner of Thompson Avenue and 14th Street in the City of Moundsville, county and state aforesaid. Therefore, the officer to whom the warrant was addressed was commanded to apprehend said John Doe, and to enter and search the described premises and seize all liquors, bottles &c., and other apparatus apparently used in the unlawful traffic, and

to arrest all parties and persons found in said premises and bring them before the justice issuing the warrant or some other justice. The argument is, in substance, that all ''John Doe'' search warrants are void on their face. We have heretofore decided this contention in *State* v. *McKeen,* 100 W. Va. 476, where the same argument was interposed to a ''John Doe'' search warrant, wherein we said, ''A search warrant containing formal parts and properly describing the place to be searched, and the articles to be seized, need not name or describe the owner or occupant of the premises.'' The opinion prepared by Judge LITZ in that case renders the search warrant in this case and evidence obtained thereunder, admissible; and this point of error is not well taken. Nor is there any merit in the assertion that the place to be searched was not particularly described. It was described as ''that certain two-story frame building situate at the southeast corner of Thompson Avenue and 14th Street in the City of Moundsville, County of Marshall and State of West Virginia.'' It could have been more particularly described by giving the length, width, height of the building, color of paint, if painted, and kind of roof; but such detail description would be unnecessary in order to enable the officers to locate definitely and with certainty the place to be searched. *State* v. *Noble,* 96 W. Va. 432.

Was the evidence sufficient to sustain the verdict? Can we say that the jury was justified in finding beyond all reasonable doubt that defendant had unlawful possession of the liquor? We have carefully inspected the evidence with that question in mind. We recognize and follow the rule established for generations and approved by experience, that great caution should be exercised by the courts in awarding a new trial when it is asked for on the ground that the verdict is without sufficient evidence to support it. Great weight is always given to the verdict of the jury and the judgment of the trial court in such cases; and the cases are rare in which the appellate court has interferred. It is done only where the evidence is plainly insufficient and justice is clearly defeated.

The weight of testimony and inferences to be drawn therefrom are peculiarly within the province of the jury, and if the new trial depends upon the weight of the testimony and the inferences which may reasonably be drawn therefrom, the verdict will not be disturbed. *State* v. *Winans,* 100 W. Va. 418. The wareroom could be entered only by going through defendant's dining-room (first passing through the kitchen) or through the storeroom. The front door to the wareroom was locked. The officers saw little evidence of carpenter work in progress in the storeroom. They observed no carpenter's tools stored there. They saw a can opened and evidences of fresh paint on the stepladder which they found in the storeroom. The quantity of liquor (1 and 1/2 gallons) would not be persuasive of its having been secreted there by a workman. None of the alleged workmen were witnesses to tell when they or any of them had been doing work in the wareroom or the character of that work. There is no evidence tending to show that the liquor was "planted" for the purpose of a false charge of possession against defendant. The witnesses were before the jury, and their demeanor and frankness in testifying is a factor of weight and credibility of which the appellate court is deprived. On the whole we are not disposed to disturb the verdict, although we might have rendered a different one had we been on the jury.

State's instructions Nos. 1 and 2 are alleged to be erroneous and prejudicial, on the ground that the criminal intent in the possession of the liquor is left out. These instructions told the jury, in substance, that the possession of moonshine liquor was unlawful, and for one to have in his possession such liquor for personal use was as much a violation as to have it in possession for sale or any other unlawful purpose, and if they believed from the evidence beyond all reasonable doubt that defendant did have in his possession a quantity of moonshine liquor, "as charged in the indictment," then it was their duty to find him guilty. Defendant's counsel argues that the instructions are bad because they leave out the word "knowingly" before the words "did have in his possession". It is argued that it is not unlawful in all instances to have moon-

shine liquor in possession, as for instance where an officer has confiscated moonshine liquor to be produced as evidence. And we held in *State* v. *Lambert,* 100 W. Va. 377, that it was error to give an instruction that the mere manual possession of moonshine liquor was sufficient to convict; and to refuse an instruction offered by defendant telling the jury that if they believed he had the liquor in his possession for the purpose of analyzing it to ascertain its contents and had no knowledge that it was moonshine liquor he should be acquitted—a defense set up in his evidence. Here, in the instant case, the element of possession for a lawful purpose does not enter. Defendant denied any knowledge whatever of the presence of the liquor. And as bearing on his want of knowledge, and therefore no possession, he introduced witnesses to show that other persons had opportunity to secrete the liquid in his wareroom, and might have done so. His instruction No. 13, given, told the jury to acquit him if they believed the liquor was secreted on his property without his knowledge or consent. He had the theory of his defense fully presented to the jury by his instructions, fourteen in number, all given; and the jury could not have been misled by state's instructions Nos. 1 and 2 because they did not have the words "knowingly" or "unlawfully" coupled with the possession. Instructions must be considered and construed as a whole. Besides the two instructions (all the state offered) each qualify the possession with the addition of the words "as charged in the indictment". The indictment charges defendant with unlawfully having in his possession a quantity of moonshine liquor, against the peace and dignity of the state. And we held in *State* v. *Whitecotten,* 101 W. Va. 492, 133 S. E. 106, that an instruction might be supplemented by the indictment which always goes into the jury's hands on which to return the verdict. We find no error in the instructions.

The judgment will be affirmed.

*Affirmed.*