# CHARLESTON.

JACKSON V. BLAIR JR. *v.* CLARK COAL & COKE COMPANY

(No. 6336)

Submitted May 14, 1929.     Decided May 28, 1929.

*Frank R. Amos* and *Ward Lanham,* for plaintiff in error.
*Henry S. Lively,* for defendant in error.

508

HATCHER, JUDGE:

This is an action by an attorney to recover the balance of the amount claimed as his fee. The defendant is the successor of four corporations which jointly owed the federal government a balance of $208,514.23, with interest, on income taxes for the year 1920. The plaintiff was employed by the defendant in 1925 to attempt to reduce that balance after two other tax experts had failed. In connection with Captain M. G. Sperry, an attorney, and Virgil L. Highland, a prominent business man, he was instrumental in having the tax balance reduced by the government to $60,000.00. He devoted about two months of his time to the case, and made several trips to Washington and other places. He does not base his demand on the time consumed, however, but on the results obtained. He claims that with the interest included, his services resulted in a total saving of $241,270.84, to the four corporations. He fixed his fee at five per cent. of this amount, or $12,063.50. The defendant paid him $1,176.00. The jury allowed him the balance of his claim, which, with interest, amounted to $11,281.24. The trial court sustained the verdict and the defendant obtained a writ of error here.

Nineteen grounds of error are assigned, but as only four are elaborated in defendant's brief, we assume that the other fifteen were simply "thrown in for good measure."

The first error assigned is the refusal of the court to give instructions Nos. 4, 4a, 5, 6, 7, 9, 10, 12 and 13, requested by the defendant. Instructions 4, 4a, 12 and 13 have a common vice in that they seek to treat $2,074.53 (or "the amount of money already received by plaintiff" as No. 4a terms it) as compensation or part compensation to plaintiff, when as a matter of fact a material part of the $2,074.53 paid him by defendant was for costs and expenses. Nos. 5 and 6 would have submitted to the jury the question of whether the plaintiff had used ordinary care, skill and diligence in representing the defendant. There is no evidence warranting a submission of this question. Besides, plaintiff does not seek a recovery because of his care, skill and diligence, but because of what he accomplished. Nos. 7, 9 and 10 are substantially covered

by defendant's instruction No. 8, which was given. Consequently, we see no prejudice to the defendant because of instructions refused.

The second point of error is that the plaintiff was permitted to show in evidence the payment of dividends by the defendant in 1921, the year following that for which the taxes were assessed. The purpose of the plaintiff in introducing this evidence as stated in his brief was to show the difficulties before him in securing a reduction of the taxes. The effect of this evidence, according to the defendant was to create an inference that it had deliberately diverted to its stockholders money due the government. As the plaintiff's case is based solely on the reduction which he claims to have secured, and not on the obstacles he overcame, this evidence is not logically relevant to the issue and was inadmissible. 22 C. J., 158-9.

The third point of error is the refusal of the court to allow defendant's witness, Captain Sperry, to testify as to the fee he charged for his services in connection with the reduction secured. This evidence was properly rejected. What one lawyer charges is not the standard in such matters. He may charge too much or too little. The measure of an attorney's compensation, when not fixed by contract, is the amount usually paid to the profession for similar services. 6 C. J., p. 748, sec. 331.

The fourth point of error is a hypothetical question which was asked several expert witnesses introduced by the plaintiff. After negotiations had been pending between the plaintiff and the government officials for sometime, the plaintiff secured an official indication that the government would accept $80,000.00 as payment in full of its demands. But at the succeeding conference, the officer representing the government stated that under the showing then made he could not consider accepting less than the full amount of the taxes, with interest, and that he "had no jurisdiction" to accept a less amount than the entire balance due unless it be shown that the defendant was in an insolvent condition. From that stage to the end of the negotiations, the plaintiff was assisted by Captain Sperry and Mr. Highland. Affidavits were introduced showing that the entire value of the property of the four corporations was only

$349,458.37, while their indebtedness amounted to $534,707.45, of which $280,354.85 was secured by liens having priority over the claims of the government. Upon this showing the compromise was effected. After stating the facts relative to the tax and the negotiations of the plaintiff leading up to the time that the commissioner threatened to call off negotiations unless the defendant was shown to be in a bankrupt condition, the hypothetical question proceeded as follows: "Assuming further that thereafter Mr. Blair procured and submitted additional evidence before the Internal Revenue Collector at Washington as to the value of the various coal company properties involved in this matter and various other data, including two affidavits which were prepared or partly prepared by another attorney, making two trips from Fairmont, West Virginia, to Washington, D. C., for this purpose, and as a result of all which the Internal Revenue Collector finally accepted * * * $60,000.00, in full settlement of the original assessments against said four companies, * * * the savings thus effected amounting to the sum of $241,270.84." The assumption thus propounded is that the entire reduction in taxation was due to the efforts of the plaintiff. What really induced the reduction was the impoverished condition of the corporations. No reduction could be obtained until that condition was presented to the government. The plaintiff's efforts up to that time had produced no definite results. His own evidence shows that Captain Sperry and Mr. Highland actively assisted him in presenting the true situation to the government. The reference in the question to two affidavits prepared by another attorney is manifestly incomplete in describing Captain Sperry's services. Besides, the question assumes that because the tax reduction amounted to $241,270.84 the defendant was saved that amount. This is a mere paper estimate. From the affidavits which plaintiff assisted in presenting to the governmental officials, it appears that had the corporations sold their property at the full valuation ($349,458.37), they could not have paid the government, after settling prior liens ($280,354.85), but $69,103.52. The acceptance by the government of $60,000.00, therefore, actually saved the corporation only $9,103.52. Plaintiff contends that

consideration should be given his testimony that the defendant was solvent at the time it employed him. Even so, the defendant was shown to be insolvent later when the reduction was secured. Its condition then, and not prior thereto, determines the saving resulting from the reduction. He also contends that the defendant should not be heard now to assail the question, because it propounded the same question to one of its witnesses. No authority is cited in support of the contention. The defendant strenuously objected to the question when it was propounded by plaintiff. Its objections were unavailing and answers favorable to plaintiff were obtained. Under such circumstances we see nothing objectionable in defendant's submitting the plaintiff's theory of the case to its witness for the purpose of obtaining thereon an answer unfavorable to the plaintiff, and thereby combatting plaintiff's evidence before the jury, rather than looking- to the courts only, for relief therefrom. The question exaggerates the efforts of the plaintiff, ignores the condition of the company and the aid of Mr. Highland, omits important details of Captain Sperry's services, and bases the saving to the company on theory instead of fact. It was therefore improper to submit it to plaintiff's witnesses. See Jones Comm. on Ev. (2d Ed.), secs. 1327 and 1328; 22 C. J., secs. 799, 800, 804, and the host of cases cited under note 97, p. 714. The answers of those witnesses were highly prejudicial to the defendant, and call for a reversal of the case.

For the reasons above set forth, the judgment of the trial court will be reversed, the verdict of the jury set aside, and a new trial awarded.

*Judgment reversed; verdict set aside;*
*new trial awarded.*