UNITED THACKER COAL COMPANY *v.* HARRY M. WAUGH

(No. 7001)

Submitted May 24, 1932. Decided May 31, 1932.

*Hogg & Crawford,* for plaintiff in error.
*Buford C. Tynes,* for defendant in error.

LIVELY, JUDGE:

The issue presented to, and decided by, the jury was whether Blunt, the lessee in a coal mining lease, had recovered at least 75% of the coal in the pillars in that part of the mine operated by him under his lease of October 4, 1926.

Plaintiff coal company claimed that Blunt lacked from 9,000 to 11,000 tons of recovering 75% of the pillars, while defendant Waugh, who had guaranteed that Blunt would recover 75% of the pillars, claimed that Blunt had actually recovered the 75% except 435 tons; and, therefore, he, Waugh, as guarantor, owed plaintiff only the sum of $108.75, which amount he tendered to plaintiff, and which tender was refused. Plaintiff claimed $1400.00 as defendant's liability as guarantor, claiming, as above stated, that Blunt lacked from about 9,000 to 11,000 tons of recovering 75% of the pillars. The jury found for defendant Waugh, and returned a verdict agaist him for the amount he had tendered, ($108.75) which verdict, on motion of plaintiff, was set aside as contrary to the law and evidence and a new trial awarded; from which order, Waugh prosecutes error.

Waugh was doing railroad construction work near the mine and needed coal, and had been purchasing his coal from Blunt who had a lease contract with plaintiff coal company. For some reason, plaintiff cancelled Blunt's lease and afterwards, on October 4, 1926, the coal company again entered into a written lease (here involved) of a portion of the same mine with Blunt, and Waugh was named in the lease contract as party of the third part. This lease required Blunt to recover a reasonable amount of all the merchantable pillar coal left between the rooms driven by him, it being understood and agreed that at least 75% of said pillar coal should be deemed to be a reasonable recovery of said coal. Waugh agreed to guarantee that Blunt would mine the coal left standing in the pillars as above set out and agreed further that he would retain from the amount paid by him to Blunt ten cents on every ton delivered to him to be held by Waugh as a guaranty that Blunt would mine the 75% of the pillars. Blunt mined and delivered to Waugh 14,200 tons who paid

in full therefor without retaining the ten cents per ton, but admitted that he was liable to plaintiff for such amount of coal as was left in the pillars in excess of the 25%.

When Waugh completed his railroad construction work and no longer needed coal, the question arose between Blunt and the coal company as to the amount of tonnage which he had taken out of the mine under his lease contract of October 4, 1926, and whether he had taken out at least 75% of the coal in the pillars, and Sluss, a competent engineer, who had been employed by Blunt and by Chafin (Chafin seemed to be a silent partner with Blunt in the lease) was sent, upon request of plaintiff, into the mine to complete the mine map and make measurements, and report upon the question of Blunt's compliance with his contract as to removing the coal from the pillars in that part of the mine. He did so, and left his notes, measurements, report and map with Chafin, and subsequently took employment in the state of Tennessee where he became connected with engineering on road work. He reported to Chafin that Blunt had complied with his requirement with respect to recovery of the coal from the pillars with the exception of 435 tons. Afterwards, Waugh ascertained the facts set out in this report and when approached by the coal company to pay $1,400.00, claimed that he only owed as guarantor $108.75, being 25 cents per ton royalty on the 435 tons then in the pillars which Blunt should have mined. The only witnesses whose testimony has a direct bearing upon the issue above stated are Howell, mining engineer for plaintiff, and Sluss, the mining engineer employed by Blunt and Chafin, and who appeared as a witness for defendant Waugh. Sluss says that he went into the mine after Waugh had ceased to take coal from Blunt and made his measurements to ascertain whether Blunt had complied with his contract in recovering coal from the pillars. He states positively that his measurements were made for that purpose, and that there had been mined out of these pillars 75% with the exception of 435 tons; that all of the pillars could not be removed because stumps had to be left to hold up the mine; and that Blunt had actually recovered some of

the coal in the "chain" pillars which was not required under his lease contract.

The witness did not have his measurements, calculations, papers and map made by him at the time he testified, saying that when he finished the work he delivered all of these to Mr. Chafin. A map of the workings of the mine was handed to him by counsel for plaintiff which he identified as the map he had made. The witness Howell, engineer for plaintiff, testified that when Waugh ceased to take coal about February 1, 1928, he instructed Blunt to have a survey of the mine made which was done by Sluss, Blunt's engineer, and the map looked to be fairly correct. He says that he did not measure up the mine, but checked up the map made by Sluss. He testified that there was 14,000 tons of unmined pillar coal left standing by Blunt, but said that his calculations were based entirely upon the map made by Sluss. This was the substance of his testimony as to whether or not Blunt had mined at least 75% of the pillar coal. He bases his calculation altogether upon the map.

It is argued that the court was warranted in setting aside the verdict, because of this alleged discrepancy between the positive statements of Sluss and the map. It is argued that this documentary evidence shows that Sluss was mistaken. The map shows the entire workings of the mine and includes not only what was done by Blunt under his first lease contract which was cancelled, but also the mine workings by him under the second contract, the performance of which Waugh guaranteed. Here, we have conflicting testimony of two witnesses to establish a fact. One witness testifies positively from measurements made by him; while the other witness makes an estimate, not based upon measurements actually made, but upon an inspection of the mine map. We do not understand that Waugh guaranteed that Blunt would remove 75% of the pillar coal in the entire mine. The contract which Waugh guaranteed is that Blunt would remove 75% of the pillars between the rooms made by him under his second contract. The coal company seeks to uphold the action of the court on the familiar rule of law that when the trial

court sets aside a verdict and grants a new trial, its action is entitled to peculiar respect, and will not be disturbed by the appellate court unless plainly wrong. *Reynolds* v. *Tompkins,* 23 W. Va. 229; and *Haggar* v. *Monongahela, etc., Co.,* 106 W. Va. 522, 146 S. E. 49. In the application of this rule, we must not overlook the well established principle that a new trial cannot be awarded where the verdict is based on conflicting oral evidence, there being direct and positive evidence to sustain it, and no controlling physical, admitted or established facts inconsistent with the verdict. The credibility of witnesses and the weight to be given their evidence is a jury function, and a verdict cannot be disturbed because the trial court would have found otherwise. There must be some legal ground on which the order setting aside the verdict can be based. *Hodge* v. *Charleston Interurban,* 79 W. Va. 174, 90 S. E. 601; *Coalmer* v. *Barrett,* 61 W. Va. 257, 56 S. E. 385. If there is a clear preponderance of the evidence against the verdict, that would be legal ground on which to set it aside. And where error in the trial is discovered and brought to the attention of the trial court on a motion to set aside the verdict, then the judge may invoke and use in addition thereto his general knowledge of the case obtained by observation of the parties, witnesses and jurors, and their demeanor and conduct. His judgment based upon the error, buttressed by such knowledge, is entitled to peculiar respect. On such grounds, is based the ruling that a stronger case must be made out for a new trial than is required to sustain the action of the trial court in awarding it. *Wilson* v. *Fleming,* 89 W. Va. 553, 109 S. E. 810. No error in the trial is urged in the instant case. It was submitted to the jury without argument or instructions. They weighed the conflicting evidence, and no legal ground is perceived on which it can be set aside. The general rule is that a verdict on conflicting oral testimony is ordinarily conclusive. *Goodwill* v. *Motor Co.,* 109 W. Va. 65, 152 S. E. 864. The preponderance of the evidence on the issue involved seems to be in favor of defendant. Neither the map nor the deductions made therefrom by plaintiff's engineer can override the positive testi-

mony of Sluss made from actual measurements to the effect that 75% of the pillars under the second lease contract were recovered by Blunt with the exception of 435 tons.

On these principles, we reverse the order setting aside the verdict and enter judgment here on the verdict for the amount tendered by Waugh, with costs to the coal company incurred up to the time of the tender, and with costs to the defendant incurred after the tender had been refused; and with costs to plaintiff in error in this Court.  *Reversed; entered.*