JOSEPH A. STENGER, *et al.*

*v.*

HOPE NATURAL GAS COMPANY

(No. 10735)

Submitted September 13, 1955. Decided November 22, 1955.

GIVEN, JUDGE, dissenting.

*William E. Glasscock, Howard F. Meek,* for plaintiff in error.

*Charles S. Armistead, John D. Downes,* for defendants in error.

LOVINS, PRESIDENT:

This action was brought by J. A. Stenger and his wife, Anna M. Stenger, in the Circuit Court of Monongalia County, against Hope Natural Gas Company for the recovery of damages resulting from an explosion and fire occurring in the residence of plaintiffs.

This Court, on a former writ of error, reversed a judgment in favor of the plaintiffs, set aside the verdict and remanded the case for a new trial. *Stenger* v. *Hope Natural Gas Co.,* 139 W. Va. 549, 80 S. E. 2d 889.

Many of the facts on this writ of error are substantially the same as shown in the record on the first writ of error. It would serve no useful purpose to restate such facts in detail. Reference is here made to the former opinion in *Stenger* v. *Gas Company, supra.* We

deem it advisable, however, to restate some of the facts.

Plaintiffs were the owners of a dwelling house in which they resided, situate in Morgantown, West Virginia, on Fayette Street. Defendant is the owner of a gas pipe line which traversed such street in front of the plaintiffs' residence.

Almost immediately in front of plaintiffs' residence was a gate valve enclosed in a manhole. When rain fell, water collected around the gate valve and bubbles appeared on the surface of the water collected in the manhole. This condition had been noticed by persons using Fayette Street.

The Hope Natural Gas Company purchased the gas distribution system in the town of Morgantown from the West Penn Power Company in the year, 1950. It is shown that the condition at the gate valve had been reported to the former owner of the distribution system by Stenger, but no such report had been made to the Hope Natural Gas Company by him.

On the morning of January 27, 1952, Mr. and Mrs. Stenger left their residence at different times to go to their place of business located nearby. Mr. Stenger returned about 11 A.M. Before he entered the building, an explosion occurred, blowing debris out in the front yard of the residence. Stenger was struck by the debris and dazed for a short time; however, he was not seriously injured. The city fire department was called and the fire was extinguished.

The gate valve was shut off and a fire at or near the sun porch on the front of the Stenger residence ceased to burn. The residence was rendered almost useless and a considerable number of articles of furniture were destroyed or damaged. The damage to the house and the furniture will be hereinafter discussed.

The record in the instant case is similar as to numerous facts shown in the record before this Court on the first writ of error.

In addition to the testimony contained in the record on the first writ of error, the present record discloses that Joseph Bierer, a civil engineer, testified as an expert witness on behalf of the plaintiff, in addition to David B. Reger, another expert witness. Reger testified on the former hearing and there is no substantial difference between his former testimony and his testimony shown in this record.

Bierer testified that he had visited the Stenger residence four times within the last six months, spending from one to four hours on each visit; that he examined the basement, first floor, second floor and one room on the third floor, as well as the sun porch. He also examined the outside of the building to determine the extent of damages as to displacement of materials and the result of the fire.

According to his testimony, considerable damage was done in the basement by fire, but there is no evidence of an explosion. The fire in the basement was confined to the room at the foot of the stairway, the northeast room and the furnace room. He bases his conclusions as to absence of an explosion in the basement on the fact that no windows in the basement were blown outward nor were the partitions or walls displaced.

This witness testified that on the first floor a glass door, window and window panes were blown outward, the east wall was displaced outward and that there was clear indication of an explosive force in the kitchen from the condition of the windows and outside walls of the kitchen and living room.

There was no evidence of an explosion on the second floor of the Stenger residence.

This witness testified that he found an opening of about four inches in width leading from the inside of the basement to a space under the sun porch.

Bierer stated from his examinations, it was his opin-

ion the explosion and fire was caused by gas escaping from the leaky gate valve which permeated the Stenger residence and caused the explosion. He explained that gas is lighter than air and tends to seek a higher level when confined in a room and accumulates downward. He explained the escape of gas from the leaky gate valve by testifying that there was porous earth along the service line which leads from the street to the Stenger residence. He also testified that all indications found by his examinations showed that gas escaped from a broken gate valve and that the explosion occurred on the first floor.

It is to be noted that Mr. and Mrs. Stenger did not smell gas on the morning of the explosion. The witness explained that fact by testifying that the gas collected toward the ceilings of the rooms in the house rather than at lower levels; that gas having a tendency to follow a surface, would not be diffused in a room until a considerable amount had collected. The testimony of Bierer is in conflict with other expert testimony.

Defendant contends that there is not sufficient evidence to go to the jury; that the introduction of certain testimony over their objection was error; that the court erred in failing to strike out certain testimony admitted over its objection; that the plaintiffs did not prove any negligence on the part of defendant or that such negligence was the proximate cause of the explosion and fire; that it was error to refuse the defendant's peremptory instruction; that it was error to give plaintiffs' instruction number 1; that the judge of the trial court committed error in making certain remarks when ruling on defendant's motion to direct a verdict for defendant; that the verdict of the jury is excessive.

We are aware that the opinion of this Court in *Stenger* v. *Hope Natural Gas Company, supra,* on the first writ of error, constitutes the law of the case insofar as the record then existed.

We adhere to the holding on the former writ of error as to the insufficiency of evidence then presented. But in the instant case, we have credible and reasonable evidence, in addition to that formerly presented. The witness Bierer, whose evidence has been heretofore reviewed at some length, together with other facts proved by plaintiffs, furnishes a basis for an inference that the fire and explosion in the Stenger property came from the leaky gate valve situate on Fayette Street, owned and operated by the defendant company.

Gas being of such nature that it is not detectable except by the sense of smell, that situation renders it difficult to actually trace the gas from one point to another. We are confronted with the several outstanding facts: A broken and leaky gate valve in front of the Stenger residence under 35 pound pressure which caused water standing around such valve to bubble, a gas fire burning under the sun porch of the Stenger residence which ceased to burn when the gate valve was shut off and the presence of gas in other buildings located near the Stenger residence detected by the explosometer.

The record in this case presents a somewhat unusual factual situation. In *Moore* v. *Heat & Light Co.*, 65 W. Va. 552, 64 S. E. 721, this Court stated the principle that the burden is on the plaintiff to establish liability, and that evidence which gives rise to conjecture is not sufficient. In *Agsten* v. *United Fuel Gas Co.*, 117 W. Va. 515, 186 S. E. 126, we find the following rule enunciated in the first point of the syllabus: "In order to sustain a recovery against a utility company engaged in the distribution of natural gas for damages caused by the explosion of natural gas upon the premises of one of its consumers, there must be evidence sufficient to sustain a finding by the jury that the escape of the gas which caused the explosion was due to some negligent act of the defendant or that it escaped from some instrumentality entirely within the control of the defendant."

The predecessor in title of the Hope Natural Gas Com-

pany knew of this defective gate valve but there is no showing that the Hope Natural Gas Company received any report relative to the condition of such valve. Nevertheless, the record shows that the Hope Natural Gas Company patrolled the line on Fayette Street where the leaky valve was installed.

The defendant having the exclusive use of the gas line in conducting gas to the Stenger residence, assumed the duty of reasonable inspection and maintenance of the line while it was so used. *Groff* v. *Gas Co.*, 110 W. Va. 54, 156 S. E. 881; *Canfield* v. *Gas Co.*, 80 W. Va. 731, 93 S. E. 815. See *Barrickman* v. *Marion Oil Co.*, 45 W. Va. 634, 32 S. E. 327.

The defendant's predecessor in title, when notified of the leak in the gate valve, should have repaired it within a reasonable time. The patrolling and inspection of the gas line on Fayette Street by the defendant should have brought the defective condition of the gate valve to its attention so that it could have been repaired within a reasonable time; before the explosion and fire. See *Dowler* v. *Gas Company*, 71 W. Va. 417, 76 S. E. 845.

Substantially, the same principle as that stated in the *Agsten* case is laid down in *Bell* v. *Develop. & Gas Co.*, 106 W. Va. 155, 145 S. E. 165. See *Laurent* v. *Gas Co.*, 101 W. Va. 499, 133 S. E. 116; *Burk* v. *Huntington Development & Gas Co.*, 133 W. Va. 817, 58 S. E. 2d 574.

Before a public utility, distributing gas to private consumers, may be held liable for an explosion or fire, it must be shown by a preponderance of the evidence that the explosion or fire was caused by negligence of the utility company and that such negligence was the proximate cause of the fire or explosion.

Defendant complains that the remarks of the trial judge were prejudicial. There is ample authority that a trial judge should refrain from prejudicial remarks in the presence of the jury. In the instant case however, the remarks relied upon by the defendant as constituting

error were made out of the presence of the jury and in the process of ruling on defendant's motion to direct a verdict for the defendant. This did not constitute prejudicial error. See *Newlin* v. *Beard, et al.,* 6 W. Va. 110. We perceive no error in respect to the remarks of the trial judge.

The defendant assigns as error the giving of plaintiffs' instruction number 1 over its objection.

An examination of the former opinion by this Court discloses that this Court, in such opinion, approved plaintiffs' instruction number 2 which is almost identical with plaintiffs' instruction number 1 in this case, and therefore, such assignment of error is without merit.

The foregoing relative to the sufficiency of the evidence disposes of the motion made by the defendant for a directed verdict, as well as the alleged error in refusing the peremptory instruction number 1.

Some of the testimony was elicited by hypothetical questions. The propounding of a hypothetical question is not justified unless the evidence proves or tends to prove in an appreciable degree the facts on which such question is based. *Canning Co.* v. *Throwing Co.,* 98 W. Va. 487, 128 S. E. 280. When the facts assumed in hypothetical questions not proved nor admitted, a hypothetical question is improper. *Blair* v. *Coal & Coke Co.,* 107 W. Va. 507, 148 S. E. 849; *Williams* v. *Comp. Com'r.,* 127 W. Va. 78, 31 S. E. 2d 546. A hypothetical question which omits a material fact should not be propounded. *Byrd* v. *Railway Co.,* 123 W. Va. 47, 13 S. E. 2d 273. For the general rule relative to hypothetical questions, see 20 Am. Jur., Evidence, §788. We have carefully examined the hypothetical questions found in this record and find no serious defect in them.

The defendant contends that the verdict of $19,500.00 is excessive.

The verdict rendered in the first trial in this case and

considered on the first writ of error was $19,802.00. In this case, the verdict was for $19,500.00. It is to be noted that the verdict of the jury in the instant case is smaller than that rendered in the former case. The proof of the amount of damages to plaintiffs' house and furniture shown by this record sustains the amount of the verdict.

When property is completely destroyed, the amount of recovery is measured by the market value at the time of the destruction. *Stenger* v. *Hope Natural Gas Co.*, *supra*, and cases therein cited. If the property is not completely destroyed and the damages are of a permanent nature, the diminution of the market value of the property, by reason of the injury, is the measure of damages. In cases of damages or destruction of property, the problem to be solved is the actual amount of loss sustained by its owner. See *Biederman* v. *Henderson*, 115 W. Va. 374, 176 S. E. 433; *Ogg* v. *Murdock*, 25 W. Va. 139.

We perceive no reason to hold that the jury in the instant case was misled or acted from passion, bias or prejudice in fixing the amount of recovery. The amount of the verdict is sustained by proof, therefore, we hold that the verdict is not excessive.

As stated above, the jury returned a verdict for the plaintiffs. On this writ of error, we are called upon to appraise the force and effect of such verdict.

On appellate review of a jury case, the reviewing court must treat the evidence as being favorable to the verdict, "* * * and give it the strongest probative force of which it will admit. So long as there is nothing so inherently or otherwise manifestly improbable in the character of the evidence as to justify the court in ignoring it, the credibility of the witnesses is a question for the jury." *Roberts* v. *Toney*, 100 W. Va. 688, 693, 131 S. E. 552. See *Ercole* v. *Daniel*, 105 W. Va. 118, 141 S. E. 631; *Howes* v. *Railroad Co.*, 77 W. Va. 362, 87 S. E. 456.

The outcome on this writ of error in a measure depends upon the weight to be accorded the conflicting testimony of expert witnesses. The jury was the exclusive judge of the weight to be accorded such testimony. *State* v. *Winans,* 100 W. Va. 418, 130 S. E. 607. See *State* v. *Jankowski,* 102 W. Va. 234, 134 S. E. 919; *Denoff* v. *Fama,* 102 W. Va. 494, 135 S. E. 578; *Coal Co.* v. *Waugh,* 112 W. Va. 379, 383, 164 S. E. 511.

In the absence of a showing of manifest wrong and injustice or that the verdict is not warranted by the facts, it will not be disturbed on review. *Cohen* v. *Matz,* 93 W. Va. 124, 116 S. E. 712. Substantially, the same principle is enunciated in the case of *Coal Co.* v. *Electric & Machine Works,* 94 W. Va. 300, 118 S. E. 512. See *Ensminger* v. *Coal Co.,* 101 W. Va. 341, 132 S. E. 751; *Aliff* v. *Berryman,* 111 W. Va. 103, 160 S. E. 864. Of course if there is error in the trial of a case or if the evidence is insufficient to support the verdict, the verdict will be set aside. *Booth* v. *Railway Co.,* 68 W. Va. 674, 70 S. E. 559.

Stenger was permitted to testify, over the objection of defendant, that he was denied a permit to rebuild or repair his residence by the City of Morgantown. On the former writ of error, this Court held that the introduction of a municipal ordinance requiring repair with fireproof materials would tend to enhance the market value of the property destroyed or damaged, was error.

In the instant case, the evidence so admitted tended to establish the market value of that part of the residence and furniture remaining after the fire and explosion, and comes within the rule of *Zindell* v. *Central Mut. Ins. Co. of Chicago,* (Wis.) 269 N. W. 327, 330. See Annotation 107 A. L. R. 1122. As related to an agreement to repair under a policy of insurance, see *Rutherford* v. *Royal Ins. Co.,* 12 Fed. 2d 880 and Annotation 49 A. L. R. 817.

Applying the rule heretofore enunciated by this Court

to the instant case and giving to the jury the weight and respect due it, an inference is authorized that the gas which caused the explosion escaped from the leaking gate valve in the street.

A summation of the facts admitted or established is as follows: There was a leaky gate valve in close proximity to the Stenger residence. After the explosion, there was a blue flame, which showed it came from gas by its color, burning under or near the sun porch. The presence of gas in other buildings near the Stenger residence, porous soil between the leaky gate valve and the sun porch of the Stenger residence, and the partial destruction of the sun porch by the explosion, leads to a reasonable conclusion that the explosion and fire were caused by the defective valve maintained by the defendant. It was the duty of the defendant to inspect and repair its own appliances. Being negligent in that duty and such negligence being the proximate cause of the fire and explosion, the verdict of the jury should not be disturbed.

Finding no prejudicial error, the judgment of the Circuit Court of Monongalia County is affirmed.

*Affirmed.*

GIVEN, JUDGE, dissenting:

I am unable to concur in the decision of the Court for two reasons: First, in my opinion, the evidence does not establish negligence on the part of defendant; and, second, assuming that negligence of defendant was sufficiently proved, there is no fact or facts proved from which it can be inferred that the damages resulting from the explosion and fire were the results of such negligence. The law relating to these two propositions is well stated in the majority opinion: "Before a public utility, distributing gas to private consumers, may be held liable for an explosion or fire, it must be shown by a preponderance of the evidence that the explosion or fire was caused by negligence of the utility company and that such negligence was the proximate cause of the fire or explosion."

358

Since the majority relies solely on the evidence of the witness Bierer to reach the result different from that reached in the prior hearing in this Court, and also approves the principles of law adhered to in the former opinion, I need now consider only the testimony of that witness, in the light, of course, of the evidence found in the present record. The only testimony of that witness which could possibly relate to negligence of defendant related to the gate valve which, after the explosion, was found to be broken. The witness had no personal knowledge of that fact, since his first examination of the premises where the explosion occurred was more than two years after the explosion and the removal of the gate valve. The witness' theory, concerning which he was permitted to state an opinion, commenced with a supposition that gas escaped from the gate valve, traveled through porous soil, the porosity of the soil not being even indicated, except that the witness described the soil under the sun porch as "just loose dirt", and entered the open air space under the sun porch; that after reaching the open air space underneath the sun porch it separated itself from the open air and passed through the floor of the sun porch to the ceiling thereof; that after accumulating against the ceiling in such quantities and under such pressure as necessary, it flowed through doors, or openings around doors, into each room of the dwelling, including the room on the third floor, and the basement, until exploded. I suppose I will have to disregard the evidence of the witness who removed the gate valve shortly after the explosion, as the majority did, though it is credible and not disputed, to the effect that to remove the gate valve "It was neccesary to cut through the concrete of Fayette Street, in order to make an excavation or an opening around this gate valve. From the very top of this gate valve to the very bottom,—and incidentally, we had to dig ten inches underneath this gate valve, in order to put our cutters on,—from the top to ten inches below this gate valve, this ground was firm." It will be noticed that Bierer's evidence makes

no reference to any fact even relating to the question of negligence, except possibly that there was a "leaky" gate valve. The only facts referred to by the majority as having relation to negligence of defendant are that an employee of defendant "patrolled the line" on Fayette Street; that there was a "leaky" gate valve; that there was a fire under the sun porch which went out upon closing the gate valve; and that there was gas in other buildings near the Stenger dwelling. Each fact mentioned was fully developed on the first trial. After examination, and re-examination more than once, I am fully convinced that the majority mentions every fact, proved or which might be inferred, having any tendency toward establishing negligence of defendant.

I need point out only briefly why the facts proved, in my opinion, are insufficient to establish negligence. In the first place, the existence of the "leaky" or broken gate valve does not prove negligence. The break or the leak must be the result of negligence, and the burden of proving negligence was upon the plaintiffs. Such a break may occur in many ways without fault of the owner. Unless the failure of the employee who patrolled the gas line to discover the leak, or to discover the broken valve, or a weakness in the valve which would probably result in its being broken, be so considered, there is no possible indication of negligence on the part of defendant. As pointed out by the majority, the *res ipsa loquitur* rule can not be applied in this type of case. It is true that there is testimony to the effect that gas bubbles were seen coming from around or through vents in the cover over the gate valve box and that such fact was reported to the predecessor in title of defendant. Transfer of the property to defendant was in December, 1950, and the explosion occurred on January 27, 1952, so that, necessarily, such report was made a considerable time before the explosion, and the existence of the "bubbles" at the time of the report does not necessarily, or inferentially, have any relation to the defect, if there was a defect, or to the breaking of the gate valve. There is not even a

contention that defendant had any notice or knowledge of the broken condition of the gate valve before the explosion. Neither can I find an inference of negligence in the fact that a fire burning under the sun porch ceased to burn at about the time of the closing of the gate valve. It may as reasonably be assumed that the fire was from gas which escaped from the service lines of plaintiffs or from any one of the service lines of properties in the immediate vicinity, as to assume, or speculate, that it flowed from the gate valve, perhaps more so since all the evidence relating to the escape of gas from the gate valve was to the effect that such gas was flowing into the air through the vents in the gate box cover, not through the concrete or firm earth around the gate valve box, and through the soil between the gate valve to the point where the fire was burning. As to the other fact contended to indicate negligence of defendant, that gas was found in certain other buildings, I think it clearly immaterial, if it does not, in fact, indicating that escaping gas was probably coming from some source or sources other than the gate valve.

Assuming, however, that there is sufficient evidence on which negligence or an inference of negligence may be founded, there is no evidence to support an inference that the explosion which caused the damages was the result of gas which escaped from the gate valve, broken or not broken. Only the theory of the witness Bierer is relied on by the majority to support the conclusion that there is a substantial difference between the proof offered on the prior trial and the proof shown by the record presently before the Court. It should be noticed that Bierer's first examination of the premises where the explosion occurred was more than two years after the explosion. Therefore, any statement made by him as to "loose dirt" under the sun porch, or any fact observed by him, such as a crack in the basement wall, should be given no consideration. The supposed expert opinion of the witness as to how the gas reached the inside of the dwelling is based on no facts. The fatal

flaw in the theory or opinion of the witness is that he merely assumed or speculated that gas from the gate valve traveled through the metal gate valve box, or the concrete surrounding that box, and through the soil to the open air space under the sun porch, instead of upward through the vents in the loosely fitting cover over the gate valve box. It seems as reasonable to assume that the explosion was the result of gas escaping from plaintiffs' own service lines or appliances in the dwelling, or from some other service lines in the near vicinity. The point, however, is that we should not base liability on mere speculation. The balance of the theory of the witness is just as fantastic. Can it possibly be believed that natural gas, after reaching the open air, passed under the sun porch, separated itself from the air, traveled upward through the floor of the sun porch to the ceiling of the sun porch and from there to every room in the dwelling, in sufficient quantities to cause the explosion which destroyed the dwelling? We are not required to believe that which is impossible to believe, even from supposed experts. Matters of common knowledge are not subjects for expert opinions.

Being of the views indicated, I respectfully dissent.